# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LAMAINE JEFFERSON, (B-60321), ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 14 C 5386 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| JEFF HUTCHINSON, Warden, ) | |
| Menard Correctional Center, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is pro se petitioner Lamaine Jefferson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, the Court denies the petition and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## BACKGROUND

Jefferson challenges his 2007 Cook County, Illinois convictions for murder, armed robbery, and possession of a stolen motor vehicle.

When considering a habeas petition, a federal court presumes that the state courts' factual findings are correct unless the petitioner rebuts those findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Rhodes v. Dittmann*, 783 F.3d 669, 674 (7th Cir. 2015). The following factual background is drawn from the state-court record, ECF No. 17.

The victim, Adam Adam, died from strangulation following a home invasion and armed robbery at his apartment. *Illinois v. Jefferson*, No. 1-07-2005 (Ill. App. Ct. Dec. 2, 2009) (ECF No. 17-1 at 2) [hereinafter "App. Ct. Op."]. The three offenders were petitioner, Miranda Howard, and James Groleau. (*Id.*) Howard and Groleau testified for the prosecution pursuant to

plea agreements. Jefferson had previously made a written statement admitting his involvement in Adam's death. (*Id.*)

In June 2000, Howard, then 17, was in separate relationships with Adam and Jefferson. (*Id.* at 2.) She was living with Adam at his apartment in Chicago's Edgewater neighborhood. (*Id.*) Howard was a prostitute, (*id.* at 4), and met Adam while on the street, (ECF No. 17-22 at 72, Trial Tr., at YYY-13). Adam owned a taxicab business and provided Howard with clothing, food, and drugs. (App. Ct. Op. at 2.) Howard considered Adam her "sugar daddy" and Jefferson her "boyfriend." (*Id.* at 2, 4.)

In the early morning of June 10, 2000, Howard had a telephone conversation with Jefferson in which she suggested that they rob Adam so that they could travel to Texas to visit her father. (*Id.* at 2-3.) They devised a plan to rob Adam of his cash and car. (*Id.* at 2-4.) Howard told Jefferson that she would call him when Adam left the apartment. (*Id.* at 3.) Howard and Jefferson did not discuss harming Adam. (*Id.*)

Jefferson related his plan to Groleau, who agreed to help. (*Id.* at 3-4.) Jefferson told Groleau that the plan was to rob the apartment when Adam was not home. (*Id.* at 3.) Later that evening, Jefferson and Groleau went to Adam's apartment. (*Id.* at 3-4.) Howard was to leave the apartment key underneath a mat for Jefferson. (*Id.* at 4.) Jefferson could not find the key, so he went to a nearby payphone and called Howard. (*Id.*) Howard told Jefferson that Adam was still in the apartment. (*Id.*)

Undeterred, Jefferson and Groleau returned to the apartment building, where Jefferson scaled the side of the building to Adam's apartment on the second floor. (*Id.* at 3-4.) Howard, who was sitting inside the apartment, saw Jefferson outside the apartment window, who signaled to Howard to remain quiet. (*Id.* at 3.) Jefferson removed an air conditioner window unit and

2

entered through the window. (*Id.*) Howard went to the kitchen, where Adam was, because she did not want Adam to know that she had seen Jefferson entering the apartment. (*Id.*)

Once in the apartment, Jefferson went downstairs to let Groleau inside. (*Id.* at 4.) Jefferson and Groleau returned to confront Adam in the apartment. (*Id.* at 3, 4.) Neither Howard nor Adam gave Jefferson or Groleau permission to enter the apartment. (*Id.* at 3.)

When he saw the intruders, Adam expressed surprise. (*Id.*) Jefferson and Groleau then pushed Adam into a bedroom, where Jefferson put Adam in a chokehold. (*Id.* at 3.) They proceeded to "hog tie" Adam, binding his neck, feet, and hands with electrical cords that were in the apartment. (*Id.* at 4, 5.) In his statement to authorities, Jefferson said that he tied the cords tight around Adam's neck, but made sure he was alive and could still breathe when they left the apartment. (*Id.* at 5.) The medical examiner concluded that Adam died from strangulation caused by the cords. (*Id.* at 6.)

Jefferson, Groleau, and Howard took money from the apartment and fled from the area in Adam's car. (*Id.* at 3.) The group used the money to buy drugs and then drove to Texas, stopping at an amusement park along the way. (*Id.* at 6.)

Four days after the home invasion, Adam's body was discovered in the apartment. (*Id.* at 1-2.) Two days after that, the offenders were arrested in Texas after having gotten into an accident while driving Adam's car and then fleeing the scene. (*Id.*) It was determined that the car had been stolen and was related to the murder in Chicago. (*Id.*)

Once in police custody in Texas, Jefferson gave a statement to the police confessing to the murder. (*Id.*) A Cook County Assistant State's Attorney ("ASA") flew to Texas, where Jefferson gave a second, written confession to the ASA. (*Id.*)

Jefferson was convicted following a bench trial before the Honorable Dennis J. Porter. The trial court found Jefferson guilty of felony first-degree murder predicated on home invasion, armed robbery, and possession of a stolen motor vehicle. (*Id.* at 6.) Jefferson was sentenced to sixty years for murder and a consecutive thirty years for armed robbery, totaling ninety years' imprisonment. (*Id.* at 6-7.) He also received a seven-year concurrent sentence for possession of the stolen motor vehicle. (*Id.* at 7.) Jefferson's conviction was affirmed on direct appeal, and the Illinois Supreme Court denied Jefferson's petition for leave to appeal. Jefferson unsuccessfully sought postconviction relief.

**ANALYSIS**

On July 11, 2014, Jefferson filed the present pro se petition for a writ of habeas corpus. The Court has liberally construed Jefferson's filings. *See Perruquet v. Briley*, 390 F.3d 505, 512 (7th Cir. 2004). The petition raises the following claims: (1) the state appellate court, on postconviction review, erred in failing to consider Jefferson's motions to substitute counsel and to strike appointed counsel's *Finley* motion; (2) there is insufficient evidence to support the conviction for home invasion; (3) there is insufficient evidence to support the conviction for armed robbery; (4) the trial court erred in sentencing Jefferson to a consecutive thirty-year sentence; (5) appellate counsel rendered ineffective assistance; and (6) trial counsel rendered ineffective assistance.

**A.     Legal Standards**

Jefferson faces a stiff burden. A writ of habeas corpus cannot issue unless a petitioner demonstrates that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Court cannot grant habeas relief unless the state court's decision on the merits

was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or the state court's decision was based on an unreasonable determination of facts in light of the evidence presented in the state-court proceeding. 28 U.S.C. § 2254(d); *Jean-Paul v. Douma*, 809 F.3d 354, 359 (7th Cir. 2015). The state court's ruling must have been "'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Carter v. Douma*, 796 F.3d 726, 733 (7th Cir. 2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

**B. Petitioner's Claims**

   **1. Claim One: The State Appellate Court's Adjudication of the Postconviction Appeal**

Jefferson argues that the state appellate court erred on postconviction review when it failed to address his motions for substitution of counsel and to strike appellate counsel's motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). Jefferson's argument stems from a belief that his appointed postconviction appellate attorney suffered from an inherent conflict of interest. In Jefferson's view, the appellate court erred by granting counsel's *Finley* motion while ignoring Jefferson's motion to strike it and for substitution of counsel.

Pursuant to state court appointment, the Office of the State Appellate Defender represented Jefferson on both his direct and postconviction appeals. Different attorneys represented Jefferson on each appeal. Jefferson does not argue, and there is nothing in the record to suggest, that his two appellate attorneys had any interaction regarding the case. Jefferson nonetheless believes that the appointment of the appellate defender to represent him on both appeals resulted in an inherent conflict of interest because his postconviction petition

5

challenged the performance of counsel on direct appeal.

Due to this concern, on postconviction appeal Jefferson filed a pro se motion for substitution of counsel. Around the same time, Jefferson's appellate counsel then moved to withdraw under *Finley*. (ECF No. 17-9.) The appellate court did not immediately address the motions. Jefferson then filed a pro se motion to strike the *Finley* motion. The appellate court treated Jefferson's motions as responses to counsel's *Finley* motion, granted the *Finley* motion, and summarily affirmed the denial of the postconviction petition. (ECF No. 17-8.) Jefferson subsequently filed a pro se motion for rehearing, (ECF No. 17-11), which was denied, (ECF No. 17-12), and a pro se petition for leave to appeal, (ECF No. 17-13), which was also denied, (ECF No. 17-14.)

Jefferson argues that the state appellate court violated his due process rights by failing to consider his motions. The Court rejects this claim. In its order granting the *Finley* motion and summarily affirming the denial of the postconviction petition, the appellate court stated that it had carefully reviewed the full record, including Jefferson's filings (which were construed as responses to the *Finley* motion). (ECF No. 17-8 at 2.) The appellate court considered Jefferson's arguments a second time when it denied his request for rehearing. Jefferson's contention that the state appellate court ignored the content of his motions is therefore incorrect. The Court did not treat the filings as motions, procedurally, but it did address their substance in the original court order and in denying Jefferson's motion for rehearing.

Furthermore, Jefferson is mistaken that his postconviction appellate attorney had a conflict of interest. A conflict does not arise simply because lawyers from the same public defender's office represent an individual at different stages of his criminal and post-conviction proceedings. *See Silva v. Williams*, No. 14 C 5203, 2014 WL 6435120, at *9 (N.D. Ill. Nov. 17,

2014) (citing *Barnhill v. Flannigan*, 42 F.3d 1074, 1078 (7th Cir. 1994)); *see also Dellinger v. Bowen*, 301 F.3d 758, 767 n.11 (7th Cir. 2002) (recognizing that no conflict of interest exists simply because two attorneys are both employed by the State as public defenders). The Court does not presume a conflict of interest where none is demonstrated. *See Barnhill*, 42 F.3d at 1078 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 347-48 (1980)). All that has been demonstrated here is that Jefferson was represented by two different public defenders, which is insufficient to create a conflict of interest.

Furthermore, Jefferson has no constitutional right to bring a postconviction proceeding or to a postconviction attorney, and, in turn, has no constitutional right to effective assistance of counsel in his postconviction proceeding. *See Finley*, 481 U.S. at 555.

Claim One is rejected.

### 2. Claims Two and Three: Sufficiency of the Evidence Supporting the Convictions for Home Invasion and Armed Robbery

Jefferson argues that there is insufficient evidence to support his convictions for home invasion (Claim Two) and armed robbery (Claim Three). Both claims involve related arguments regarding the electrical cords used to strangle Adam. Jefferson maintains that he could not be found guilty of home invasion or armed robbery because he was not armed with a dangerous weapon when he entered the apartment. He also claims that the robbery was complete before they tied up Adam. Finally, he argues that the electrical cords were not dangerous weapons.

On this sufficiency challenge, the Court applies a "twice-deferential standard" in reviewing the state court's ruling. *See Parker v. Matthews*, --- U.S. ----, 132 S. Ct. 2148, 2152 (2012) (per curiam) First, the Court must be deferential to the verdict. "'[I]t is the responsibility of the [finder of fact] to decide what conclusions should be drawn from evidence admitted at

7

trial.'" *Id.* (quoting *Cavazos v. Smith*, --- U.S. ----, 132 S. Ct. 2, 4 (2011) (per curiam)). "The evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Second, the habeas Court may not overturn a state-court decision rejecting a sufficiency challenge unless the decision was "objectively unreasonable." *Id.* (quoting *Cavazos*, 132 S. Ct. at 4).

Jefferson first argues that the prosecution failed to prove that he was armed when he entered Adam's apartment. The relevant elements of home invasion are: (1) a person who is not acting as a peace officer in the line of duty knowingly making an unauthorized entry into the dwelling of another; (2) knowing that a person was present when making the entry; and (3) intentionally causing injury to a person once in the dwelling. 720 ILCS 5/19-6; *Illinois v. Zarate*, 637 N.E.2d 1044, 1053 (Ill. App. Ct. 1994). Jefferson reads into the home-invasion statute a requirement that the offender be armed at the time he enters the dwelling, an element that does not exist. The evidence shows that Jefferson entered Adam's apartment without authorization knowing that Adam was there, put Adam in a chokehold, and then tied electrical cords around Adam's neck so tightly that he died from strangulation. That was sufficient evidence to find Jefferson guilty of home invasion.

As for armed robbery, Jefferson contends there was insufficient evidence to support the conviction because the robbery was already complete before he restrained Adam. This argument is without merit. The relevant elements of armed robbery are: (1) taking property from a person or presence of another by force or threat of force, while (2) being armed with a dangerous weapon. 720 ILCS 5/18-1, 18-2; *People v. Shaw*, 713 N.E.2d 1161, 1172 (Ill. 1998).

8

"'Although the required force or threat of force must either precede or be contemporaneous with the taking of the victim's property, use of a dangerous weapon at any point in a robbery will constitute armed robbery as long as it reasonably can be said to be a part of a single occurrence.'" *Illinois v. Dennis*, 692 N.E.2d 325, 332-33 (Ill. 1998) (citations omitted). "[T]he offense of armed robbery is complete when force or threat of force causes the victim to part with possession or custody of property against his will." *Id*. at 334. Although the commission of an armed robbery thus ends when both force and taking cease, the force that occurs simultaneously with flight or an escape continues the commission of the offense. *Id.* The evidence shows that Jefferson and Groleau tied Adam up in order to take Adam's money. They also used that force to effectuate their flight from the scene. Accordingly, the state court properly found that there was sufficient evidence to convict Jefferson for armed robbery.

Furthermore, Jefferson is incorrect that the electrical cord was not a dangerous weapon. The Illinois armed-robbery statute does not define "dangerous weapon," but the meaning is derived from common law. *Illinois v. Hernandez*, 51 N.E.2d 794, 799 (Ill. 2016). What constitutes a "dangerous weapon" is a question for the finder of fact and includes "not only objects that are *per se* dangerous, but objects that are used or may be used in a dangerous manner." *Id.* (citing *Illinois v. Ross*, 891 N.E.2d 865, 878 (2008)). Even everyday objects can be dangerous weapons for purposes of the armed-robbery statute when they are used "in a manner likely to cause serious injury." *See id.* Thus, the state court properly found that the electrical cords were dangerous weapons because they were used in a manner likely to cause serious injury—tightly wrapped around Adam's neck.

There is sufficient evidence to support Jefferson's convictions, and he cannot meet the AEDPA's demanding standard. Claims Two and Three are denied.

### 3. Claim Four: Consecutive Thirty-Year Sentence for Armed Robbery

Jefferson challenges the fact that his thirty-year sentence for armed robbery runs consecutively to his sixty-year sentence. He argues that the consecutive nature of the sentence violates the Illinois "one act, one crime" doctrine. This claim is procedurally defaulted. Jefferson raised the claim in the state trial and appellate court on collateral review, but failed to include it in a petition for leave to appeal to the Illinois Supreme Court, which resulted in procedural default. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004) (to avoid procedural default, a petitioner must raise his federal claim through one complete round of state-court review). Aside from default, the claim has no merit. The "one act, one crime" doctrine is solely a matter of state law and therefore not cognizable in a federal habeas corpus proceeding. *Foster v. Korte*, Civil No. 12-CV-1172-DRH-CJP, 2014 WL 5470970, at *4 (S.D. Ill. Oct. 28, 2014).

Claim Four is denied.

### 4. Claims Five and Six: Ineffective Assistance of Counsel

In Claims Five and Six, Jefferson asserts that his trial and appellate counsel were ineffective. Claims for ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate ineffective assistance of counsel, Jefferson must demonstrate both deficient performance and prejudice. *See Premo v. Moore*, 562 U.S. 115, 121 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). The Court's review under *Strickland* is deferential, and applying *Strickland* under the AEDPA (which itself also requires deference) results in a doubly deferential review of the state court's determination. *Knowles*, 556 U.S. at 123.

Jefferson's claims of ineffective assistance are vague and conclusory. For example, one

of his arguments is that trial counsel failed to subject the prosecution's case to "any meaningful adversarial testing." (ECF No. 1 at 22.) This contention is not borne out by the record. In any event, Jefferson cannot demonstrate a *Strickland* violation due to the overwhelming evidence of his guilt. He confessed to authorities. His two accomplices testified against him at trial. He and his accomplices were arrested driving the victim's car. Jefferson cannot demonstrate that he was prejudiced by counsel's performance in his case.

Jefferson also asserts that his trial and appellate counsel were ineffective for failing to raise the sufficiency arguments presented in Claims Two and Three. As explained above, these claims are meritless, so counsel cannot be faulted for failing to raise these losing arguments. *See Whitehead v. Cowan*, 263 F.3d 708, 731 (7th Cir. 2001). Claims Five and Six are rejected.

**C.** **Certificate of Appealability**

Under Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Resendez v. Knight*, 653 F.3d 445, 446 (7th Cir. 2011). An applicant has made a "substantial showing" where "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Resendez*, 653 F.3d at 446 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) (some internal quotation marks omitted). Because Jefferson has not made this showing, the Court declines to issue a certificate of appealability.

Jefferson is advised that this is a final decision ending his case in this Court. If he wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of

judgment. *See* Fed. R. App. P. 4(a)(1). Jefferson need not bring a motion to reconsider this Court's ruling in order to preserve his appellate rights. However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

## CONCLUSION

Petitioner's habeas corpus petition [1] is denied on the merits. The Court declines to issue a certificate of appealability. The Clerk is instructed to enter a judgment in favor of respondent and against petitioner. Civil case terminated.

**SO ORDERED.**                        **ENTERED:**    December 8, 2016

_____
**JORGE L. ALONSO**
**United States District Judge**